IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| STEVE DIDMON, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | CIVIL ACTION NO. H-11-2051 |
| § | |
| FRONTIER DRILLING (USA), INC., § | |
| *et al.*, § | |
| § | |
| Defendants. § | |

**MEMORANDUM AND OPINION**

Steve Didmon filed this personal-injury lawsuit against Frontier Drilling (USA), Inc., FD Frontier Drilling (Cyprus) Ltd. ("Frontier Cyprus"), and Noble Drilling (U.S.) Inc. in Texas state court in January 2011. (Docket Entry No. 1, Ex. B). Shortly after Didmon amended his petition in May 2011, (*id.*, Ex. A), the defendants removed the suit to this court under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C. §§ 201–08, based on an alleged arbitration agreement between Didmon and Frontier Cyprus. (Docket Entry No. 1). The defendants have moved to dismiss or, in the alternative, to stay this lawsuit in favor of arbitration. (Docket Entry No. 6). Didmon has responded and moved to remand. (Docket Entry No. 17). The defendants have replied, and Didmon has surreplied. (Docket Entry Nos. 18–19).

Based on the motion and responses, the record, and the applicable law, the defendants' motion to dismiss or to stay is denied, and Didmon's motion to remand is granted. The reasons for these rulings are explained below.

**I.   Background**

Didmon worked for Frontier Cyprus. His employment was governed by Frontier Cyprus's "Expatriate Employment Agreement" ("Employment Agreement"). The first page of the Employment Agreement states: "This Agreement constitutes the entire agreement between the EMPLOYEE and the COMPANY, contains all the terms and conditions of employment, and may not be amended except in writing, properly subscribed by both the COMPANY and the EMPLOYEE." (Docket Entry No. 6, Ex. C, ¶ II). The Employment Agreement also states that Cypriot law governs issues of interpretation and enforceability. (*Id.*, ¶ XX(A)). Vern Westerhout, General Manager for Frontier Cyprus, signed the Employment Agreement on May 21, 2008, and Didmon signed it on May 26. (*Id.*, at 8).

Didmon also signed a separate Alternative Dispute Resolution Agreement ("ADR Agreement"), a preprinted form prepared by Frontier Cyprus. The ADR Agreement requires Didmon and Frontier Cyprus to arbitrate any disputes between the parties, including tort claims:

> The Company and I mutually consent to the resolve all controversies or claims ("claims"), whether or not arising out of my employment (or its termination), that the Company may have against me or that I may have against the Company or against its agents, employees, directors, or officers in their capacity as such or otherwise. The claims covered by this Agreement are not limited to but include, claims for compensation or wages due; claims for breach of any covenant or contract (expressed or implied); claims for discrimination (including, but not limited to, race, sex, religion, national origin, age, marital status, or medical condition, handicap or disability); tort claims; claims for benefits (except where an employee benefit or pension plan specifies that its claims procedure shall culminate in an arbitration procedure different from this one), and claims for violation of any federal, state, or other governmental law, statute, regulation, or ordinance, except for claims excluded in the following paragraph.

(Docket Entry No. 7, Ex. D, at 1). The ADR Agreement is on the same Frontier Cyprus letterhead as the Employment Agreement. Didmon signed the ADR Agreement on May 27, 2008, one day after

2

he signed the Employment Agreement. Frontier Cyprus did not sign the ADR Agreement. The signature block contains fields for the employee to fill out and sign but not for the employer. (*Id.*, at 5).

Didmon was injured working offshore for Frontier Cyprus and filed this suit. The defendants have moved to dismiss or stay this litigation in favor of arbitration, which they allege is required by the ADR Agreement. Didmon responds that the ADR Agreement is unenforceable and that remand is required. The arguments are analyzed below.

**II.   Arbitration**

9 U.S.C. § 201 requires federal courts to enforce the Convention on the Recognition and Enforcement of Foreign Arbitral Awards. There are four requirements to determining whether the Convention requires arbitration: "(1) there is a written agreement to arbitrate the matter; (2) the agreement provides for arbitration in a Convention signatory nation; (3) the agreement arises out of a commercial legal relationship; and (4) a party to the agreement is not an American citizen." *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 339 (5th Cir. 2004) (internal quotation marks omitted). If these requirements are satisfied, a federal court must compel arbitration "unless it finds that the said agreement is null and void, inoperative or incapable of being performed." *Id.* (internal quotation marks omitted). Didmon disputes that there is a valid written agreement to arbitrate. He bases his argument on the fact that Frontier Cyprus did not sign the ADR Agreement.

Both Didmon and Frontier Cyprus signed the Employment Agreement. That Agreement only requires disputes about its "existence, validity or termination" to be arbitrated in Singapore. (Docket Entry No. 6, Ex. C, ¶ XX(B)). Neither party argues—and rightly so—that this arbitration provision applies to this personal-injury dispute.

3

The Employment Agreement also provides that the terms and conditions of employment, not stated in the Employment Agreement, cannot be "amended except in writing, properly subscribed by both the COMPANY and the EMPLOYEE." (*Id.*, ¶ II). Didmon argues that because Frontier Cyprus did not sign the ADR Agreement, which includes a broad arbitration clause that would apply to Didmon's personal-injury claim if enforceable, the arbitration clause is not part of the Employment Agreement. The defendants respond that "[t]he fact that Frontier Drilling Cyprus used its own form ADR Agreement," which contains Frontier Cyprus's logo, "is sufficient evidence that Frontier Drilling Cyprus, like Plaintiff, 'subscribed' (i.e., agreed) to the terms of the ADR Agreement[.]" (Docket Entry No. 18, ¶ 6).[1]

The question is whether Frontier Cyprus can be said to have "subscribed" to the ADR Agreement containing the arbitration clause because it prepared the document and used its own letterhead with its logo. The answer turns on what "subscribed" means. The ADR Agreement states that Cypriot law governs questions about interpretation or enforceability. (Docket Entry No. 6, Ex. C, ¶ XX(A)). Neither party discusses the applicable Cypriot law.[2] Both parties look to general maritime law and Texas law and appear to agree that they are appropriately applied.

Under both maritime law and Texas law, courts determine the contracting parties' intent by giving unambiguous terms their plain meaning. *See Channette v. Neches Gulf Marine, Inc.*, 440 F. App'x 258, 260 (5th Cir. 2011) (per curiam) (citing *Fontenot v. Mesa Petrol. Co.*, 791 F.2d 1207,

---

[1] The defendants also argue that Didmon "should not be allowed to avoid [the Arbitration Clause's] enforcement ... after he voluntarily and knowingly signed it." (Docket Entry No. 18, ¶ 6). This argument is unpersuasive. Didmon does not dispute that he voluntarily and knowingly signed the Arbitration Clause. He argues instead that his signature alone does not make the ADR Agreement enforceable because the Employment Agreement required Didmon and Frontier Cyprus to sign.

[2] Didmon has cited authority for the proposition that "Cypriot law is based on English law." (Docket Entry No. 17, at 4 n.4).

4

1214 (5th Cir. 1986)) (maritime law); *Wilson v. Noble Drilling Servs., Inc.*, 405 F. App'x 909, 915 (5th Cir. 2010) (per curiam) (citing *Interstate Contracting Corp. v. City of Dallas*, 407 F.3d 708, 712 (5th Cir. 2005)) (Texas law). A term is ambiguous if it is susceptible to more than one reasonable interpretation. *Channette*, 440 F. App'x at 260 (citing *Chembulk Trading, LLC v. Chemex Ltd.*, 393 F.3d 550, 555 n.6 (5th Cir. 2004)) (maritime law); *Wilson*, 405 F. App'x at 915 (citing *DeWitt Cnty. Elec. Coop., Inc. v. Parks*, 1 S.W.3d 96, 100 (Tex. 1999)) (Texas law). Black's Law Dictionary defines "subscription" as "[t]he act of signing one's name on a document; the signature so affixed." BLACK'S LAW DICTIONARY 1468 (8th ed. 2004). The American Heritage Dictionary definition is similar: "[t]he signing of one's name, as to a document." AMERICAN HERITAGE DICTIONARY 1726 (4th ed. 2006). The American Heritage Dictionary gives four definitions of "subscribe," all focused on the act of signing: "[t]o sign (one's name) at the end of a document"; "[t]o sign one's name to in attestation, testimony, or consent"; "[t]o sign one's name"; and "[t]o affix one's signature to a document as a witness or to show consent." *Id.*; accord MERRIAM-WEBSTER ONLINE, http://www.merriam-webster.com/dictionary/subscribe (last visited Mar. 18, 2012) (similar definitions, such as "to give consent or approval to something written by signing"). State court opinions are consistent in using "subscribe" to refer to the act of signing one's name. *See Kindred v. City of Smithville*, 292 S.W.3d 420, 426 (Mo. Ct. App. 2009) ("Missouri courts have recognized that the word 'subscribe' 'literally means "[t]o sign at the end of a document."' *Gregg v. Georgacopoulos*, 990 S.W.2d 120, 125 (Mo. App. 1999) (quoting BLACK'S LAW DICTIONARY 1427 (6th ed. 1990))."); *Kloian v. Domino's Pizza L.L.C.*, 733 N.W.2d 766, 773 (Mich. Ct. App. 2006) ("'Subscribe' means 'to append, as one's signature, *at the bottom of a document* or the like; sign.' *Random House Webster's College Dictionary* (2001) (emphasis added)."). *Cf. Thompson v. McAllen*

5

*Federated Woman's Bldg. Corp.*, 273 S.W.2d 105, 109 (Tex. Civ. App.—San Antonio 1954, no writ) ("While the strict definition of the word 'subscribe' or 'subscription' involves the idea of a written signature, yet by common usage it is often employed to include an agreement, written or oral, to give or pay some amount to a designated purpose, more usually, perhaps, to some purpose for the promotion of which numerous persons are uniting their means and efforts.").

The plain meaning of "subscribe," in this context, requires the element of signature. Frontier Cyprus did not sign the ADR Agreement that contained the arbitration clause. Having the document printed on its letterhead is not signing the document. Because the Employment Agreement specified signatures by both parties for effective amendment, and Frontier Cyprus did not sign, the Agreement was not validly amended to include the ADR Agreement and its arbitration clause. Because there is no written agreement to arbitrate, the Convention does not require arbitration.

The defendants argue that the arbitration clause in the ADR Agreement should be enforced under equitable estoppel. (*See* Docket Entry No. 18, ¶¶ 7–10). "Equitable estoppel applies when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against a nonsignatory." *QPro Inc. v. RTD Quality Servs. USA, Inc.*, 761 F. Supp. 2d 492, 499 (S.D. Tex. 2011). In this case, Didmon does not rely on the terms of the ADR Agreement in asserting his tort claims against Frontier Cyprus. Equitable estoppel does not apply.

The remaining issue is remand. The defendants removed under 9 U.S.C. § 205, on the basis that the parties had entered into an arbitration agreement governed by the Convention. (Docket Entry No. 1, at 1). Didmon quotes this court's previous opinion in *QPro*:

> The arbitrability of a dispute will ordinarily be the first issue the district court decides after removal under § 205. If the district court decides that the arbitration clause does not provide a defense, and no other grounds for federal jurisdiction exist, the court must ordinarily remand the case back to state court.

*Id.* at 504 (quoting *Beiser v. Weyler*, 284 F.3d 665, 675 (5th Cir. 2002)). Because there is no enforceable arbitration agreement, there is no basis for federal removal jurisdiction. "Absent § 205, no other basis for federal jurisdiction exists." *QPro*, 761 F. Supp. 2d at 504. Didmon's claims are based on the Jones Act, 46 U.S.C. § 30104, and general maritime law. (Docket Entry No. 1, Ex. A, at 2). "Federal and state courts share concurrent jurisdiction over Jones Act claims." *JNB Marine, Inc. v. Stodghill*, 769 F. Supp. 2d 1028, 1032 n.4 (E.D. Va. 2011) (citing, for example, *Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S. 438, 455 (2001)). "[A] Jones Act claim . . . is not subject to removal to federal court even in the event of diversity of the parties." *Lewis*, 531 U.S. at 455. Remand is required.

## III.  Conclusion

The defendants' motion to dismiss or stay in favor of arbitration, (Docket Entry No. 6), is denied. Didmon's motion to remand, (Docket Entry No. 17), is granted. This action is remanded to the 334th District Court of Harris County, Texas.

SIGNED on March 19, 2012, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge